# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BOBBY SINGLETON,** *et al.*, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **WES ALLEN,** *et al.* ) <br> ) <br> **Defendants.** ) <br> ) | **No.: 2:21-cv-01291-AMM** <br><br> **Three-Judge Court** |
| **EVAN MILLIGAN,** *et al.*, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **WES ALLEN,** *et al.* ) <br> ) <br> **Defendants.** ) <br> ) | **No.: 2:21-cv-01530-AMM** <br><br> **Three-Judge Court** |
| **MARCUS CASTER,** *et al.*, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **WES ALLEN,** *et al.* ) <br> ) <br> **Defendants.** ) <br> ) | **No.: 2:21-cv-01536-AMM** <br><br> **Three-Judge Court** |

### *SINGLETON* PLAINTIFFS' OPPOSITION TO SECRETARY ALLEN'S EMERGENCY MOTION FOR STAY PENDING APPEAL

## INTRODUCTION

Secretary Allen has moved for a stay of this Court's order enjoining his use of Alabama's 2023 plan in future congressional elections, for two reasons.[1] First, he "has fundamental disagreements with the Court over whether the 2023 Plan remedies a likely § 2 violation and whether the 2023 Plan complies with § 2." *Milligan*, ECF No. 276 at 4. Second, he contends that because of the injunction and the Court's adoption of a new map, Alabamians will be "segregated into different districts based on race." *Id.* As to the first issue, the *Singleton* Plaintiffs believe that the Court correctly decided that the 2023 Plan did not remedy the § 2 violation because it does not contain two opportunity districts. As to the second issue, the Secretary's premise is just plain wrong: it is unnecessary to segregate voters by race in order to remedy the § 2 violation. In fact, the Court *cannot* order a new congressional plan that separates voters by race because, as the *Singleton* Plaintiffs' plans demonstrate, a racially segregated plan would not survive strict scrutiny. Therefore, the Secretary is wrong when he claims that "[t]he balance of harms necessarily supports a stay so that millions of Alabamians are not soon districted into a court-ordered racial gerrymander." *Id.* at 5.

---

[1] The Secretary filed his motion only in *Milligan* and *Caster*, but this Court ordered the *Singleton* Plaintiffs to respond as well. ECF No. 193. Even if the *Singleton* Plaintiffs had not been ordered to respond, a response would be necessary because the Court deferred ruling on the constitutional claim in *Singleton* on the ground that "Alabama's upcoming congressional elections will not occur on the basis of the map that is allegedly unconstitutional." ECF No. 191 at 194. If the injunction is stayed, this would no longer be true and a decision on the constitutional claim would be required.

1

## ARGUMENT

To justify his request for a stay, the Secretary has invoked the specter of a racial gerrymander. A claim of racial gerrymandering requires "a two-step analysis." *Cooper v. Harris*, 581 U.S. 285, 291 (2017). "First, the plaintiff must prove that 'race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district.'" *Id.* (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)). "Second, if racial considerations predominated over others, the design of the district must withstand strict scrutiny." *Id.* at 292. Thus, a racial gerrymander may be constitutional if it "is narrowly tailored to further a compelling governmental interest," *Shaw v. Reno*, 509 U.S. 630, 658 (1993), and the Supreme Court has assumed that complying with the Voting Rights Act is a compelling interest. *Cooper v. Harris*, 581 U.S. at 292. So a racial gerrymander that is narrowly tailored to ensure compliance with the Voting Rights Act may be constitutional, but a racial gerrymander that is unnecessary to ensure compliance is unconstitutional.

The *Singleton* Plaintiffs have offered two plans that ensure compliance with the Voting Rights Act by creating two opportunity districts that do not separate voters by race. The Singleton Plan and the Smitherman Plan both have one district composed primarily of Jefferson County and another composed primarily of the Black Belt. ECF No. 147 (*Singleton* Plaintiff's Objection and Motion for

2

Preliminary Injunction) at 15. To determine whether proposed districts are opportunity districts, courts have conducted "analyses [that] aggregate votes from past elections to predict how proposed districts will perform in future elections." ECF No. 152 (Statement of Interest of the United States of America) at 12. The Secretary has admitted that in both districts in both plans, the preferred candidates of Black voters received more votes than their opponents in most of the contested statewide elections since 2012. ECF No. 180-1 (Secretary Allen's Responses and Objections to the *Singleton* Plaintiffs' Third Set of Requests for Admission) at 5–7. Therefore, these districts are opportunity districts.

  The Singleton and Smitherman Plans do not segregate voters by race to create these opportunity districts, and the Secretary has never claimed otherwise. These plans make relatively minor splits to the minimum number of counties for the sole purpose of equalizing population. The Singleton Plan adopts the State's own county splits from the 2021 Plan where possible, and splits small parts of counties otherwise. *Compare* ECF No. 169-4 (2021 Plan) with ECF No. 169-6 (Singleton Plan). The Smitherman Plan begins with a whole-county map that makes changes to Alabama's preexisting districts to the extent necessary to keep population deviation low, then makes minimal adjustments to reduce population deviation to zero. ECF No. 169-7 (Smitherman Plan). Neither plan separates voters by race. This Court has

authorized the Special Master to consider the Singleton and Smitherman Plans as potential remedies for the § 2 violation. ECF No. 192 at 9–10.

In fact, these plans (particularly the Singleton plan) outperform the enacted 2023 Plan on the State's own criteria. They generally do a better job of grouping together the Black Belt counties, and they respect the boundaries of the state's largest county, which this Court identified as one of the "significant metropolitan areas" in north Alabama. ECF No. 191 at 163. The districts are reasonably compact, and they do not necessarily pair any incumbents. ECF No. 189 (*Singleton* Plaintiffs' Proposed Findings of Fact and Conclusions of Law) at 37–41 (discussing the Singleton Plan); ECF No. 169-7 (Smitherman Plan). Thus, if the Singleton or Smitherman plan were implemented, the Secretary would have no basis to claim that the "court-drawn plan … sacrifices traditional redistricting principles in service of racial targets." *Milligan*, ECF No. 276 at 5. The court-drawn plan would not sacrifice traditional redistricting principles, and it would not use racial targets. The Defendants could not allege that they suffered any harm from the implementation of these plans.

Given these facts, the Secretary need not worry about "millions of Alabamians [being] districted into a court-ordered racial gerrymander." *Id.* Because plans exist that remedy the Voting Rights Act violation while respecting traditional redistricting principles and drawing lines without respect to race, no racially gerrymandered plan, such as one that splits a county along racial lines, could be narrowly tailored to

4

remedy the Voting Rights Act violation. Therefore, a racially gerrymandered plan cannot be constitutional, and ought not be imposed by this Court.[2] Under the proper analysis, the Secretary's concern evaporates.

## CONCLUSION

The entirety of the Secretary's argument on the "balance of harms" is that a racially gerrymandered plan should not be imposed on Alabama. But no such plan can be imposed because separating voters by race is unnecessary to remedy the § 2 violation. There are plans in the record that create two opportunity districts without resorting to segregation; as long as the Court implements such a plan, the Secretary's argument is irrelevant.

Dated: September 8, 2023

Respectfully submitted,

/s/ Henry C. Quillen
Henry C. Quillen
(admitted *pro hac vice*)
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH  03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

Joe R. Whatley, Jr.
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower

---

[2] There may be states in which racial gerrymandering is necessary to ensure compliance with the Voting Rights Act (and therefore could be constitutional), but Alabama is not one of them.

5

Birmingham, AL 35203
Tel: (205) 488-1200
Fax: (800) 922-4851
Email: jwhatley@whatleykallas.com
   tbrown@whatleykallas.com

*/s/ James Uriah Blacksher*
James Uriah Blacksher
825 Linwood Road
Birmingham, AL 35222
Tel: (205) 612-3752
Fax: (866) 845-4395
Email: jublacksher@gmail.com

Myron Cordell Penn
PENN & SEABORN, LLC
1971 Berry Chase Place
Montgomery, AL 36117
Tel: (334) 219-9771
Email: myronpenn28@hotmail.com

Diandra "Fu" Debrosse Zimmermann
Eli Hare
DICELLO LEVITT GUTZLER
420 20th Street North, Suite 2525
Birmingham, AL 35203
Tel.: (205) 855.5700
Email: fu@dicellolevitt.com
   ehare@dicellolevitt.com

U.W. Clemon
U.W. Clemon, LLC
Renasant Bank Building
2001 Park Place North, Tenth Floor
Birmingham, AL 35203
Tel.: (205) 506-4524
Fax: (205) 538-5500
Email: uwclemon1@gmail.com

Edward Still

2501 Cobblestone Way
Birmingham, AL  35226
Tel: (205) 335-9652
Fax: (205) 320-2882
Email: edwardstill@gmail.com

***Counsel for Singleton Plaintiffs***