IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE REDISTRICTING 2023**<br><br>**SPECIAL MASTER** | Misc. No. 2:23-mc-1181-AMM |

*MILLIGAN* AND *CASTER* **PLAINTIFFS' BRIEF IN SUPPORT OF REMEDIAL PROPOSAL**

## I.   Introduction

The *Caster* and *Milligan* Plaintiffs respectfully submit the VRA Plaintiffs' Plan ("VRA Plan") as a proposed remedy to the State's likely violation of Section 2 of the Voting Rights Act. The VRA Plan is a complete and comprehensive remedy that aligns with state policy, traditional redistricting principles, and the Voting Rights Act.

First, the Plan respects the Legislature's policy preferences to the extent permissible by law. It maintains the Black Belt community of interest in just two districts, retains over 80% of the lines drawn in Alabama's 2021 congressional plan, and splits Jefferson County and Mobile County close to the same manner as the State's 2021 Congressional Plan and Board of Education Plan, respectively. Second, the VRA Plan draws from and improves upon Cooper Illustrative Plan 2, a plan this

- 1 -

Court and the Supreme Court have already identified as constitutional and reasonably configured. And third, the VRA Plan abides by the Voting Rights Act, the opinion of the U.S. Supreme Court, and this Court's preliminary injunction orders by providing Black Alabamians two districts in which they have an opportunity to elect a candidate of their choice.

There is no doubt that the VRA Plan remedies Alabama's Section 2 violation. And there is no doubt that it does so in a manner that is both lawful and respectful, to the extent permitted by law, of the State's own policy choices and redistricting traditions. Plaintiffs accordingly urge the Special Master to consider the VRA Plan as a remedy.

## II. Legal Standard

To remedy Alabama's Section 2 violation, the Court must fashion a plan that complies with three criteria. First and foremost, the Court's plan must "completely remed[y] the prior dilution of minority voting strength and fully provide[] equal opportunity for minority citizens to participate and to elect candidates of their choice." *United States v. Dall. Cnty. Comm'n*, 850 F.2d 1433, 1442 (11th Cir. 1988) (citing S. Rep. No. 417, 97th Cong. 2d Sess. 26, reprinted in 1982 U.S. Code Cong. & Adm. News 177, 208). Because the essence of Section 2 liability is unequal electoral opportunity, a Section 2 remedy requires a new plan that creates an additional district in which the injured minority group has an effective opportunity

to elect their preferred candidates. *See, e.g.*, *Perez v. Texas*, No. 11-CA-360, 2012 WL 13124275, at *5 (W.D. Tex. Mar. 19, 2012) (three-judge court) (ordering, on remand from the Supreme Court, the "creation of a new Latino district" to remedy a likely violation of Section 2 of the Voting Rights Act); *League of United Latin Am. Citizens v. Perry*, 457 F. Supp. 2d 716, 719 (E.D. Tex. 2006) (three-judge court) (ordering, on remand from the Supreme Court, a remedy that restored an effective opportunity district to cure a Section 2 violation). In line with this precedent, the Court here has correctly held that the remedial plan must create "either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Milligan v. Merrill*, 582 F. Supp. 3d 924, 936 (N.D. Ala. 2022), *aff'd sub nom. Allen v. Milligan*, 143 S. Ct. 1487 (2023).

  Whether a remedial district provides a minority group an opportunity to elect is a fact-based analysis that evaluates the likelihood that the injured minority group's candidate of choice will be elected based on factors such as the district's demographics, the degree of racially polarized voting in the state, and historical election performance. *See, e.g.*, *League of United Latin Am. Citizens v. Perry* ("*LULAC*"), 548 U.S. 399, 428-29 (2006) (considering past election performance and the minority citizen voting-age population in a district to determine whether it offered an "effective opportunity" under the VRA); *Baldus v. Members of Wis. Gov't*

*Accountability Bd.*, 862 F. Supp. 2d 860, 863 (E.D. Wis. 2012) (three-judge court) (rejecting a state's remedial plan and adopting a Section 2 plaintiff's proposal that increased a remedial district's minority population to ensure an "effective majority minority" district); *cf. also Abbott v. Perez*, 138 S. Ct. 2305, 2332-33 (2018) (evaluating whether illustrative plans included "opportunity districts" by reviewing their past election performance); *League of United Latin Am. Citizens*, 457 F. Supp. 2d at 721 (concluding that a district is an opportunity district by considering past election performance and minority voting age population).

Second, while a "Court-created plan should follow . . . traditional redistricting principles, . . . these principles have less precedence than 'the requirements of the Constitution and Voting Rights Act.'" *Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Com'rs*, 996 F. Supp. 2d 1353, 1358-59 (N.D. Ga. 2014) (citing *Larios v. Cox*, 314 F. Supp. 2d 1357, 1360 (N.D. Ga. 2004) (three-judge court)); *see also Upham v. Seamon*, 456 U.S. 37, 43 (1982). That is because the Court's plan must comply with the Constitution and any other requirements of federal law, such as Section 2 of the Voting Rights Act and one-person-one-vote rule. *See Abrams v. Johnson*, 521 U.S. 74, 78-79, 98 (1997).

### III. VRA Plaintiffs' Remedial Proposal

The VRA Plan fully satisfies the relevant criteria for Court-ordered plans.

***The VRA Plan is a lawful remedy for the State's likely Section 2 violation.***
The VRA Plan completely remedies the likely violation by establishing two districts in which Black voters have an equal opportunity to elect candidates of their choice despite high degrees of persistent racially polarized voting. Dr. Maxwell Palmer—the *Caster* expert—analyzed seventeen statewide elections held between 2016 and 2022. Ex. 1, Palmer Report at 1-2. Dr. Palmer found that Black-preferred candidates would have won the VRA Plan's CD-2 in all but two elections that he analyzed. *Id.* Dr. Palmer also found that Black-preferred candidates would win all seventeen elections in the VRA Plan's CD-7.

Dr. Baodong Liu—the *Milligan* expert—analyzed eleven biracial statewide elections held between 2014 and 2022. Ex. 2, Liu Report at 1-2. *See Abrams*, 521 U.S. at 93-94 (evaluating only elections involving Black candidates to determine if a remedial plan satisfied Section 2); *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1293 (11th Cir. 2020) (noting that biracial elections between Black and white candidates may be "more probative" than elections only involving white candidates) (citation omitted); *cf. Thornburg v. Gingles*, 478 U.S. 30, 48 n.15 (1986) (noting that the success of minority candidates is one of the "most important" Senate factors bearing on Section 2 challenges to multimember districts); *Rogers v. Lodge*, 458 U.S. 613, 623-24 (1982) (similar). Consistent with this precedent, Dr. Liu focused his analysis on biracial elections because "analysis of

elections in which there are no black candidates proves only that candidates favored by blacks can win, but only if the candidates are white." *Jeffers v. Clinton*, 730 F. Supp. 196, 209 (E.D. Ark. 1989) (three-judge court), *aff'd mem.*, 498 U.S. 1019 (1991) (internal citation, quotation marks, and alterations omitted).

Dr. Liu concluded that in CD-2 of the VRA Plan, the Black candidate would have won nine of these eleven elections (or 81.8%).[1] Ex. 2, Liu Report at 1-2. CD-2 in the VRA Plan therefore provides Black voters with an additional opportunity district but is "not a guarantee of electoral success for minority-preferred candidates." *LULAC*, 548 U.S. at 428 (concluding that an "effective opportunity district" was a district where the minorities' preferred candidates would win "13 out of 15" or 86.6% of races) (citation omitted). Likewise, Black-preferred candidates would win all eleven elections that Dr. Liu analyzed in the VRA Plan's CD-7.

***The VRA Plan is guided by legislative policy and traditional redistricting criteria and complies with constitutional and federal requirements.*** The VRA Plan is consistent with legislative policy to the extent permissible by law and complies with the traditional redistricting criteria as well as the foundational principle of one-person-one-vote. The VRA Plan has a one-person population deviation, the lowest deviation permitted by the State's population and number of districts. Ex. 3, Duchin

---

[1] In contrast, in Alabama's enacted 2023 and 2021 Plans, Black candidates lost all the biracial elections that Dr. Liu analyzed in CD-2. *Milligan v. Allen*, 2023 WL 5691156, at *52-53 (N.D. Al. Sept. 5, 2023); *Milligan v. Allen*, 582 F. Supp. 3d 924, at *1017 (Jan. 24, 2022).

Report at 1. It adheres to the principle of core retention by mirroring 82.2% of the State's 2021 congressional plan and tracking the State's treatment of the Mobile region in the 2021 Board of Education plan. *Id*. at 1. The VRA Plan also places the eighteen core Black Belt counties into two districts without splitting them and places the individual plaintiffs who live in the cities of Dothan, Montgomery, and Mobile into these Black Belt districts. *Id*. at 1-3.

The VRA Plan also complies with traditional redistricting criteria of compactness, contiguity, and respect for political subdivisions and communities of interest. The VRA Plan is contiguous and reasonably compact. *Id.* at 1. The VRA Plan splits seven counties, which is only one more county than necessary to satisfy one-person-one-vote.[2] *Id.* at 3. As noted above, like the State's 2023 Plan, the VRA Plan also places the eighteen core Black Belt counties into only two districts and splits none of those eighteen counties. *Id.* at 1. And like the State's 2021 Board of Education Plan, the VRA Plan places Prichard and most of the City of Mobile in the Black Belt districts. *Id.* The VRA Plan thus connects the cities of Mobile and Prichard to the Black Belt counties out of respect for the longstanding socioeconomic, familial, and cultural ties of these overlapping communities. *See Milligan*, 2023 WL 5691156, at *25, *59-63. Finally, the VRA Plan places

---

[2] Dr. Duchin split a seventh county to place all individual *Milligan* plaintiffs in the Black Belt districts. Ex. 3, Duchin Report at 1, 3.

Alabama's purported communities of interest in no more than two districts, the same number as the 2023 Plan for the Wiregrass region, and only one additional district than the 2023 Plan for the Gulf Coast region. Ex. 3, Duchin Report at 6.

The Supreme Court has already ruled that Mr. Cooper's Illustrative Plan 2, on which the VRA Plan is based, *id.* at 1, is reasonably configured and that race did not predominate in the plan. *See Milligan*, 143 S. Ct. at 1510-11 (plurality opinion). The VRA Plan better adheres to legislative policy and provides a full and fair remedy to the likely Section 2 violation.

## IV. Conclusion

Plaintiffs respectfully urge the Special Master to recommend for adoption the VRA Plan as a remedy to the State's likely Section 2 violation.

Respectfully submitted this 11th day of September 2023.

| | |
|---|---|
| */s/ Deuel Ross* | */s/ Sidney M. Jackson* |
| Deuel Ross* | Sidney M. Jackson (ASB-1462-K40W) |
| Tanner Lockhead* | Nicki Lawsen (ASB-2602-C00K) |
| NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC. | WIGGINS CHILDS PANTAZIS FISHER & GOLDFARB, LLC |
| 700 14th Street N.W. Ste. 600 | 301 19th Street North |
| Washington, DC 20005 | Birmingham, AL 35203 |
| (202) 682-1300 | Phone: (205) 341-0498 |
| dross@naacpldf.org | sjackson@wigginschilds.com |
| tlockhead@naacpldf.org | nlawsen@wigginschilds.com |
| | |
| Leah Aden* | */s/ Davin M. Rosborough* |
| Stuart Naifeh* | Davin M. Rosborough* |
| Ashley Burrell* | Julie Ebenstein* |
| Kathryn Sadasivan (ASB-517-E48T) | Dayton Campbell-Harris* |
| Brittany Carter* | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC. | 125 Broad St. |
| 40 Rector Street, 5th Floor | New York, NY 10004 |
| New York, NY 10006 | (212) 549-2500 |
| (212) 965-2200 | drosborough@aclu.org |
| Shelita M. Stewart* | jebenstein@aclu.org |
| Jessica L. Ellsworth* | dcampbell-harris@aclu.org |
| HOGAN LOVELLS US LLP | |
| 555 Thirteenth Street, NW | */s/ LaTisha Gotell Faulks* |
| Washington, D.C. 20004 | LaTisha Gotell Faulks (ASB-1279-I63J) |
| (202) 637-5600 | AMERICAN CIVIL LIBERTIES UNION OF ALABAMA |
| shelita.stewart@hoganlovells.com | P.O. Box 6179 |
| | Montgomery, AL 36106-0179 |
| David Dunn* | (334) 265-2754 |
| HOGAN LOVELLS US LLP | tgfaulks@aclualabama.org |
| 390 Madison Avenue | |
| New York, NY 10017 | Blayne R. Thompson* |
| (212) 918-3000 | HOGAN LOVELLS US LLP |
| david.dunn@hoganlovells.com | 609 Main St., Suite 4200 |
| | Houston, TX 77002 |
| Michael Turrill* | |

Harmony A. Gbe*  
HOGAN LOVELLS US LLP  
1999 Avenue of the Stars  
Suite 1400  
Los Angeles, CA 90067  
(310) 785-4600  
michael.turrill@hoganlovells.com  
harmony.gbe@hoganlovells.com  

Janette Louard*  
Anthony Ashton*  
Anna Kathryn Barnes*  
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP)  
4805 Mount Hope Drive  
Baltimore, MD 21215  
(410) 580-5777  
jlouard@naacpnet.org  
aashton@naacpnet.org  
abarnes@naacpnet.org  

(713) 632-1400  
blayne.thompson@hoganlovells.com  

*Counsel for Milligan Plaintiffs*

*Counsel for Plaintiff Alabama State Conference of the NAACP*

* *Admitted Pro Hac Vice*

Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies & Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
Email: rrouco@qcwdr.com

By: /s/ *Abha Khanna*
Abha Khanna*
Makeba Rutahindurwa*
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Phone: (206) 656-0177
Email: AKhanna@elias.law
Email: MRutahindurwa@elias.law

Lalitha D. Madduri*
Joseph N. Posimato*
Jyoti Jasrasaria*
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Phone: (202) 968-4490
Email: LMadduri@elias.law
Email: JPosimato@elias.law
Email: JJasrasaria@elias.law

*Admitted Pro Hac Vice*

***Counsel for Caster Plaintiffs***