FILED

2023 Sep-13  AM 11:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |
|---|---|
| **IN RE REDISTRICTING 2023** **SPECIAL MASTER** | Misc. No.: 2-23-mc-1181-AMM |

## The Alabama Democratic Conference's Remedial Proposal

The Alabama Democratic Conference ("ADC") respectfully submits this remedial proposal for consideration by the Special Master.[1]

## Background

The ADC is a political organization founded in 1960 to advance the interests of Black Alabamians. It has members in every congressional district and almost every county in the State. Among other things, the organization engages in voter registration, voter education, lobbying, and the endorsement of candidates for political office. The ADC has been an active participant in the Alabama redistricting process for decades. *See, e.g., Ala. Legis. Black Caucus v. Ala.*, 989 F. Supp. 2d 1227, 1303

---

[1] The ADC's remedial proposal can be viewed and downloaded at
https://davesredistricting.org/join/a5645e82-b3fd-4a96-b693-4d950260179a.

(M.D. Ala. 2013) (three-judge district court) (crediting the testimony of ADC chair, Dr. Joe L. Reed, "based on his wealth of experience in redistricting and elections in Alabama"), *rev'd on other grounds,* 575 U.S. 254 (2015).

Dr. Reed was the first Black person from Alabama to be elected as a delegate to the Democratic National Convention in 1968. He was Chair of the Alabama Delegation to the 2000 and 2012 National Democratic Conventions. Dr. Reed served on the Montgomery City Council for 24 years. He has drafted reapportionment plans for members of Congress, the State Legislature, the Alabama State Board of Education, local boards of education, county commissions, and city councils throughout the State of Alabama to remove unlawful obstacles to Black representation—including many remedial proposals that resolved Section 2 cases like this one. Dr. Reed served as Executive Secretary of the Alabama State Teachers Association and Associate Executive Secretary of the Alabama Education Association for 47 years before retiring. Currently, he serves as Chair of the ADC and as Vice Chair for Minority Affairs for the Alabama Democratic Party ("ADP"). For the last ten years, he has volunteered daily for the Alabama Democratic

Conference and the ADP. He is recognized as an expert in federal court on reapportionment and other matters.

The ADC's remedial proposal draws directly on Dr. Reed's unparalleled experience in Alabama politics.

## Discussion

The Court's order of September 5, 2023 (ECF 273), identifies four criteria that the Special Master's plans must satisfy. First, the plans must "[c]ompletely remedy the likely Section 2 violation" identified in the Court's September 5 order (ECF 272). (ECF 273 at 7.) Second, the plans must "[c]omply with the U.S. Constitution and the Voting Rights Act." (*Id.*) Third, the plans must comply "strictly" with the equal-population requirement of the Fourteenth Amendment. (*Id.* at 8.). And fourth, the plans must "[r]espect traditional redistricting principles to the extent reasonably practicable." (*Id.*) Those traditional redistricting criteria include "compactness, contiguity, respect for political subdivisions, and maintenance of communities of interest," but the Special Master is forbidden from taking into account purely political redistricting criteria "such as incumbency protection and political affiliation." (*Id.* at 9.)

The ADC's remedial proposal, shown below in Figure 1, satisfies each of the Court's criteria.



**Figure 1:** The ADC's Remedial Proposal

4

### 1.    Complete Remedy

The ADC's remedial proposal remedies the Section 2 violation by creating two districts in which Black voters would have a meaningful opportunity to elect candidates of their choice. As shown in Table 1, the Black voting-age population in those districts is 53.3 percent and 54.5 percent, respectively. No other plan of which we are currently aware has such robust opportunity districts.

**Table 1:** District Demographics
2020 Census Black Voting-Age Population (alone or in combination)

| District | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|----------|-----|------|------|-----|------|------|------|
| BVAP % | 13.5 | 53.3 | 21.9 | 8.9 | 16.3 | 12.3 | 54.5 |

In Dr. Reed's experience, a higher Black population percentage is necessary to give Black voters a meaningful opportunity to elect candidates of their choice for at least two reasons. First, the presence of prisons and jails within a congressional district means that population numbers can overstate actual Black political power.[2] Second, the legacy of discrimination means that Black candidates often cannot raise as

---

[2] For the location and a map of Alabama's correctional facilities, see https://doc.alabama.gov/FacAddr.

much money as their White competitors. These remedial districts will ensure that the Court's remedy is effective.

**2.    Constitution and Voting Rights Act**

The ADC's remedial proposal complies with the Constitution and the Voting Rights Act. It gives Black voters an opportunity to elect candidates of their choice in numbers that are roughly proportional to their share of Alabama's population.

**3.    One Person, One Vote**

The ADC's remedial proposal complies strictly with the equal-population requirement of the Fourteenth Amendment. As shown in Table 2, it has the lowest possible deviation given Alabama's total population.

**Table 2:** District Demographics
2020 Census Population Deviation from Ideal (717,754)

| District | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|----------|---|---|---|---|---|---|---|
| Deviation | 0 | 0 | 0 | 0 | 1 | 0 | 0 |

4.      **Traditional Redistricting Criteria**

The ADC's remedial proposal also respects traditional redistricting criteria such as compactness, contiguity, and respect for political subdivisions to the extent that it was reasonably practicable to do so in light of the Court's other criteria.

Each district in the plan is comprised of contiguous territory. The districts are reasonably compact, with a Reock compactness score of 0.31 and Polsby-Popper compactness score of 0.19, both of which are comparable to the plan adopted by the Legislature in 2021. The plan splits 11 counties, but it does so only to comply with the Court's other stated criteria. Several of those splits involve a very small number of people.

The ADC's proposal draws inspiration from the existing plan that the Alabama legislature approved for the State Board of Education.[3] District 2 in the ADC's plan, for example, includes many of the same counties as District 5 in the State Board of Education plan. District 1 in

---

[3] A map of the State Board of Education districts is available here: https://www.sos.alabama.gov/alabama-votes/state-district-maps.

the ADC's plan has many of the same counties that are in District 1 in the State Board of Education plan. District 5 in the ADC's plan has many of the same counties that are in District 8 in State Board of Education Plan. And District 4 in the ADC's plan includes many of the same counties in District 4 in the State Board of Education plan.

## Conclusion

The ADC respectfully asks the Special Master to recommend its plan to the Court for possible adoption as the remedy for the State's likely Section 2 violation.

Respectfully submitted this 13th day of September, 2023.

**/s/ Mark Sabel**
Mark Sabel (SAB004)
Sabel Law Firm, LLC
P.O. Box 231348
Montgomery, AL 36123
Phone: (334) 546-2161
Email: mksabel@mindspring.com

Bryan L. Sells*
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

* Admitted *Pro Hac Vice* in *Milligan*

*Attorneys for the Alabama Democratic Conference*