# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE REDISTRICTING 2023 | Misc. No. 2:23-mc-1181-AMM<br>SPECIAL MASTER |

## CAMPAIGN LEGAL CENTER COMMENTS
## CONCERNING REMEDIAL SUBMISSIONS

Campaign Legal Center ("CLC") is a nonpartisan, nonprofit organization committed to advancing democracy through law. CLC litigates redistricting matters across the country, including cases under Section 2 of the Voting Rights Act ("VRA"). CLC submits these comments in response to the Special Master's September 7, 2023 Order and to provide context for the Special Master's consideration of remedial plans submitted to correct the challenged congressional plan's violation of Section 2.

An illustrative map derived from CLC's *amicus curiae* brief in the U.S. Supreme Court has been proposed by the Singleton Plaintiffs (pursing only constitutional claims not at issue here) as a potential remedial plan. *See Singleton* Plaintiffs' Proposed Remedial Plan at 6, *In re Redistricting 2023*, No. 2:23-mc-01181-AMM (N.D. Ala. Sept. 11, 2023) (ECF No. 5). CLC writes to provide key background information on the purpose and origins of that proposed plan adopted from CLC's *amicus curiae* brief, as well as to provide a caution that the potential remedial districts in that proposed plan should be carefully examined based on the more probative 2022 election returns showing the extreme levels of racially polarized voting in Alabama. Additionally, CLC writes to

1

support that the VRA Plaintiffs' proposed remedial map is not a racial gerrymander and further refute any claimed constitutionality concerns.

**I.     The Singleton Plaintiffs' proposed remedial plan, adopted from CLC, should be carefully evaluated for its performance in light of the Supreme Court's decision and recent election results.**

On July 18, 2022, CLC submitted an *amicus curiae* brief to the Supreme Court in support of Plaintiffs in this matter. *See Brief of Amicus Curiae Campaign Legal Center in Support of Appellees and Respondents*, *Merrill v. Milligan*, Nos. 21-1086 & 21-1087, 2022 WL 2898313 (U.S. July 18, 2022), https://tinyurl.com/3mm96ysm ("CLC *amicus* Br."). CLC's brief opposed the State's argument that it would violate the Equal Protection Clause's prohibition on racial gerrymandering if it were to draw two congressional districts with Black voting age population ("BVAP") majorities, such as the demonstrative plans offered by Plaintiffs. *Id.* at *4-15. As CLC explained, when a redistricting plan—like the current unlawful Alabama congressional plan—has racially discriminatory effects, the Legislature (and the Court) necessarily must be conscious to race in remedying that discrimination. *Id.* at *11-21.

Nevertheless, the State contended that Section 2 of the VRA was only constitutional if it were interpreted to be applied in an entirely race-blind manner. That was not the law at the time the State filed its Supreme Court brief. And as the Supreme Court's decision in *Allen v. Milligan* makes clear, that is not the law today. *See* 143 S. Ct. 1487, 1512 (2023). As CLC explained in its *amicus* brief, the argument advanced by the State—that the Legislature cannot consider race in seeking to prevent racial discrimination—"is a remarkable perversion of the Fourteenth Amendment, which, it bears reminding, was ratified in response to the Civil War, slavery, and political suppression of, among others, Black Alabamians." CLC *amicus* Br., 2022 WL 2898313, at *11. But CLC included illustrative plans in its *amicus* brief to show that *even if* the State's position were to become the law, the State still passed over numerous alternatives that would have

improved opportunities for Black voters while accommodating purported desires to keep the Gulf Coast/Mobile region whole in a single district and retain the cores of prior districts. *Id.* at *21-35.

Now, the Supreme Court has explicitly rejected the State's contentions that CLC directed part of its *amicus* brief and illustrative plans to refute. The Court ruled, for example, that the Legislature cannot sacrifice the electoral opportunities of Black voters in Mobile in the name of maintaining the Gulf Coast region in a single district. "We do not find the State's argument persuasive," the Court wrote, agreeing with the district court's assessment that the testimony in the State's favor on this point was "partial, selectively informed, and poorly supported." *Milligan*, 143 S. Ct. at 1505. Likewise, the Court rejected the State's argument that minimizing disruption to the districts from the prior decade's map was a legitimate consideration to overcome the need to draw an additional Black opportunity-to-elect district. *Id.*

Because the purported State justifications that prompted the creation of CLC's illustrative plans in its *amicus* brief have been rejected, CLC's illustrative plans are not an obvious starting place for a remedial plan. The remedial plan must "completely remed[y] the prior dilution of minority voting strength and fully provide[] equal opportunity for minority citizens to participate and *to elect candidates of their choice*." *White v. State of Alabama*, 74 F.3d 1058, 1069 n.36 (11th Cir. 1996) (emphasis in original). Accordingly, if considered, the Singleton Plaintiffs' proposed remedial plan adopted from CLC should be carefully examined using a full set of recent election returns to test the districts' performances and VRA compliance. And it should be considered for its compliance with the applicable, legitimate redistricting criteria the Supreme Court did not reject, with the understanding that the underlying map was generated to refute the State's arguments at the time.

In particular, CLC's *amicus* brief containing the illustrative plans was submitted prior to the November 2022 elections. At that time, the only election featuring a Black candidate reported in publicly available redistricting tools was the 2018 Lieutenant Governor election. There were numerous Black candidates in 2022 elections, however, and it is critical that this new data be carefully examined in assessing any remedial proposal. This is because, as courts have routinely explained, among the most probative elections in assessing vote dilution are "elections that include minority candidates." *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1301 (11th Cir. 2020); *accord Nipper v. Smith*, 39 F.3d 1494, 1540 (11th Cir. 1994). This is because "when the minority's only choice is to vote for a white candidate or not vote at all, such elections are, in general, less probative on the issue of racial polarization than elections involving both black and white candidates." *United States v. Charleston Cty., S.C.*, 365 F.3d 341, 350 (4th Cir. 2004). Additionally, more recent elections are more probative in general. *Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1021 (8th Cir. 2006).[1]

As the VRA Plaintiffs' analysis shows, there are at least four statewide contests in 2022 featuring Black candidates who were clearly favored by Black voters in the remedial districts' areas, including Will Boyd (U.S. Senate), Yolanda Flowers (Governor), Wendell Major (Attorney General), and Pamela Laffitte (Secretary of State). *See Supplemental Remedial Report of Baodong Liu, Ph.D.* at 2, 4-7, *In re Redistricting 2023*, No. 2:23-mc-01181-AMM (N.D. Ala. Sept. 10, 2023) (ECF No. 7-2). Yet these candidates received a substantially lower vote share among all Jefferson County voters than did Black-preferred white candidates in prior elections. This suggests that there

---

[1] Evaluating performance of remedial districts must also take account of "special circumstances" in elections in Alabama that are less probative because they are "not representative of the typical way in which the electoral process functions." *Ruiz v. City of Santa Maria*, 160 F.3d 543, 557-58 (9th Cir. 1998); *accord Thornburg v. Gingles*, 478 U.S. 30, 75-76 (1986).

is heightened racially polarized voting to overcome in the Jefferson County-based district (proposed District 7 in the VRA Plaintiffs' remedial plan) that may not be accounted for in the Singleton Plaintiffs' proposed remedial plan (proposed District 6) adopted from CLC's *amicus* brief. Additionally, the inclusion of the portions of Shelby County in the Singleton Plaintiffs' remedial plan District 6 may further erode the vote total in favor of the minority-preferred candidates based on 2022 data showing extreme racially polarized voting in Alabama.

The Special Master must assess whether the Singleton Plaintiffs' potential remedial districts will actually perform for Black voters, given all the available data. Most importantly, the apparent pattern of significant drop-off in support among white voters when the candidate preferred by Black voters is Black rather than white is a critical factor that must be examined in fashioning an adequate remedial district. Overall, extreme levels of racial polarization in Alabama—especially in the Black Belt counties and Jefferson County—counsel against districts with BVAP below 50% of the district population in order to ensure performing districts that remedy the Section 2 violation.

## II. The VRA Plaintiffs' proposed remedial plan is not a racial gerrymander and may be adopted as an effective Section 2 remedy.

Any suggestion that it would be an unconstitutional racial gerrymander if the Special Master were to adopt two majority BVAP districts—such as the districts proposed by the VRA Plaintiffs—is unfounded. To begin, the district court already rejected the contention that the VRA Plaintiffs' demonstrative districts were racial gerrymanders because race did not predominate, and the Supreme Court concluded the district court "did not err" in reaching that conclusion. *Milligan*, 143 S. Ct. at 1511. This alone answers the question.

Moreover, it is apparent on the face of the VRA Plaintiffs' proposed map that traditional districting criteria, not race, furnish the predominant motivation for the map. *See Report on VRA*

5

*Plaintiffs' Remedial Map, Moon Duchin*, *In re Redistricting 2023*, No. 2:23-mc-01181-AMM (N.D. Ala. Sept. 11, 2023) (ECF No. 7-3). In that map, proposed District 2 contains twelve whole counties, with splits of just three counties. Likewise, proposed District 7 contains eleven whole counties, with splits of just three counties. Very few precincts are split in the entire statewide plan. The proposed districts are both visually and mathematically compact—more so than other districts included in the State's rejected enacted plan and remedial plan. The VRA Plaintiffs' proposed remedial plan adheres to the communities of interest endorsed by the Supreme Court's *Milligan* decision. *See* 143 S. Ct. at 1505. As a whole, the VRA Plaintiffs' remedial plan is focused on remedying the Section 2 violation with performing districts while achieving legitimate redistricting as good or better than the State's rejected plans to this point.

Even at a narrower view, the inquiry into racial gerrymandering looks to the "predominant motive for the design of the district as a whole," and not merely "particular portions of the lines." *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 192 (2017). Districts that have over three-quarters of their territory comprised of whole counties, like those proposed by the VRA Plaintiffs, cannot plausibly be labeled racial gerrymanders.

Two districts previously adjudicated by the Supreme Court help illustrate that the VRA Plaintiffs' proposed map is not a racial gerrymander. On the left below is a North Carolina congressional district invalidated as a racial gerrymander in *Cooper v. Harris*, 581 U.S. 285 (2017). On the right is a Texas congressional district (District 35) that the Supreme Court upheld as supported by a substantial basis in evidence that its configuration was necessary to comply with Section 2 of the VRA. *See Abbott v. Perez*, 138 S. Ct. 2305, 2331-32 (2018).

[IMAGES ON NEXT PAGE]

*Cooper* **Invalidated District**         *Perez* **Upheld District**

 

No district in the VRA Plaintiffs' remedial proposal bears resemblance to the district invalidated in *Cooper*, or for that matter other districts that courts have invalidated as racial gerrymanders. And it far exceeds Texas District 35—upheld by the Supreme Court in *Perez*—in its adherence to traditional districting principles. Nothing about the VRA Plaintiffs' proposed plan suggests that it includes districts drawn predominantly on the basis of race. The plan would not trigger, let alone fail, strict scrutiny were it ever challenged in Court.

In sum, the Special Master has an obligation to conduct a data-driven analysis of whether the remedial map fully cures the VRA violation affirmed by the Supreme Court. Accordingly, the Special Master should carefully scrutinize the Singleton Plaintiffs' proposed remedial plan derived from CLC's *amicus* brief that was created for a different purpose, designed to address State justifications that have been rejected, and, critically, did not have the benefit of the most probative elections data now available in the 2022 results. Given the Supreme Court's clear rejection of the State's arguments, the law requires a remedial plan that provides real and durable electoral opportunities for Black voters in Alabama. CLC submits that the VRA Plaintiffs' proposed remedial plan may achieve such a result without having racial considerations predominate.

September 13, 2023                                  Respectfully submitted,

/s/ Joseph Mitchell McGuire
Joseph Mitchell McGuire
(AL Bar: ASB-8317-S69M)
McGuire & Associates, LLC
31 Clayton Street
Montgomery, AL 36104
(334) 517-1000
jmcguire@mandabusinesslaw.com


Mark P. Gaber (*pro hac vice* application forthcoming)
Hayden Johnson (*pro hac vice* application forthcoming)
Campaign Legal Center
1101 14th Street, NW, St. 400
Washington, D.C. 20005
(212) 736-2000
mgaber@campaignlegalcenter.org
hjohnson@campaignlegalcenter.org


*Attorneys for non-party Campaign Legal Center*

## CERTIFICATE OF SERVICE

The forgoing was served on all counsel of record via the Court's CM/ECF system this 13th day of September, 2023.

/s/ Joseph Mitchell McGuire
Joseph Mitchell McGuire

Counsel for non-party Campaign Legal Center
