FILED

2023 Sep-13  PM 10:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |
|---|---|
| **In re Redistricting 2023** | **Misc. No.: 2:23-mc-1181-AMM**<br>**Three-Judge Court** |

### *AMICUS CURIAE* CONGRESSWOMAN TERRI SEWELL'S OPPOSITION TO THE SINGLETON PLAINTIFFS' PROPOSED REMEDIAL PLAN

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

I.   THE SINGLETON PLAINTIFFS ELIMINATE A DISTRICT IN WHICH
     BLACK PREFERRED CANDIDATES ARE LIKELY TO BE ELECTED ................... 3

     A.   The Singleton Plaintiffs Have Replaced a Secure Black Opportunity
          District with a District that is at Best a Toss-Up ...................................... 3

     B.   The Singleton Plaintiffs Achieve this Result by Slashing the Black Voting
          Age Population in District 7 and Virtually Eliminating the BPC's Margin
          of Victory ................................................................................................. 6

          1.   Comparing Performance in a 60% BVAP District with Expected
               Performance in a 40% BVAP District Is Misleading ............................ 6

          2.   Use of 2010 Election Results Is Misleading ................................. 6

     C.   The Singleton Plaintiffs Misstate the History of Racially Polarized Voting
          in Jefferson County .................................................................................. 8

     D.   Shelby County and Birmingham Are Not a Community of Interest ..................... 9

II.  THE VRA PLAN WOULD CREATE TWO DISTRICTS IN WHICH BLACK
     PREFERRED CANDIDATES ARE LIKELY TO BE ELECTED ................................. 9

III. A JEFFERSON COUNTY DISTRICT, SEPARATED FROM THE BLACK
     BELT, IS NOT REQUIRED TO CREATE A BLACK OPPORTUNITY
     DISTRICT .......................................................................................................... 10

     A.   The Pre-1992 District Is Not a Model this Court Should Endorse ...................... 11

     B.   Birmingham and the Black Belt are a Community of Interest United in
          America's Civil and Voting Rights District ............................................. 11

     C.   Congresswoman Sewell's Record Securing Wins for Rural and Urban CD
          7 ................................................................................................................ 12

CONCLUSION ....................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Milligan*,
    143 S. Ct. 1487 (2023)..................................................................................................11

**Statutes**

42 U.S.C. § 1973...........................................................................................................1, 3

National Heritage Area Act of 2022, Pub. L. No. 117-339 ...........................................14

**Other Authorities**

Alabama Secretary of State Elections Data Downloads,
    https://www.sos.alabama.gov/alabama-votes/voter/election-data .............................8

Alabama Seventh Congressional District Election Results, N.Y. Times, Nov. 28,
    2022, https://www.nytimes.com/interactive/2022/11/08/us/elections/results-
    alabama-us-house-district-7.html................................................................................7

District in Houses's FY2022 Government Funding Bills, July 30, 2021, available
    at https://sewell.house.gov/press-releases?ContentRecord_id=DB72D00A-
    B308-4B89-A912-FCCDF17AF3C3 .......................................................................14

Earl Hilliard, CBC Institute, available at https://www.cbcinstitute.org/earlhilliard....................11

Election 2012: Alabama, N.Y. Times,
    https://www.nytimes.com/elections/2012/results/states/alabama.html ....................7

Howard Koplowitz, *Sewell Champions Bill to Create National Park Designation
    for Birmingham*, Alabama News, Mar. 22, 2016,
    https://www.al.com/news/2016/03/sewell_champions_bill_to_creat.html ............14

Press Release, Rep. Sewell's Legislation Designating Alabama's Black Belt as a
    National Heritage Area Passes the house and Senate, Dec. 22, 2022,
    https://sewell.house.gov/2022/12/rep-sewell-s-legislation-designating-
    alabama-s-black-belt-as-a-national-heritage-area-passes-the-house-and-senate..............14, 15

Press Release, FY24 Community Project Funding – Terri A Sewell
    Appropriations Requests, available at https://sewell.house.gov/community-
    project-funding..........................................................................................................14

Press Release, Rep. Sewell Secures Over $7.8 Million for Community Projects in
    Alabama's 7th District in Houses's FY2022 Government Funding Bills, July
    30, 2021, https://sewell.house.gov/press-releases?ContentRecord_id
    =DB72D00A-B308-4B89-A912-FCCDF17AF3C3 S...........................................................14

## INTRODUCTION

Since 2010, Congresswoman Terri Sewell has represented the only congressional district in Alabama in which a Black Preferred Candidate ("BPC") has prevailed. She brings a distinctive perspective to the exercise of drawing a new congressional map that contains two districts in which Black voters have an opportunity to elect their preferred candidates, the objective that this Court has plainly directed to remedy Alabama's violation of Section 2 of the Voting Rights Act.

The VRA Plan, submitted by the Milligan and Caster plaintiffs, achieves that objective. It clearly provides for two congressional districts (denominated as Districts 2 and 7 in the VRA Plan) where Black voters have a realistic opportunity of electing a BPC.

By contrast, the plan submitted by the Singleton plaintiffs[1] fails to achieve the remedial objectives defined by this Court.[2] The Singleton plaintiffs have proposed a district, denominated as District 6, that consists of all of Jefferson County and a small portion of northern Shelby County. This district fails to provide Black voters with a reasonable opportunity to elect a candidate of their choice. Instead, the odds of the BPC prevailing in proposed District 6 are at best a toss-up, and in any particular year the BPC could likely lose.

Using the data provided by the Singleton plaintiffs in their brief, it appears that in their proposed District 6, the BPC would lose 30% of the time. But in another 40% of the

---

[1] The Singleton plaintiffs' proposed remedial plan was filed at Dkt. No. 5 on September 11, 2023 (hereinafter, "Singleton Br.").

[2] While the focus of this Brief is on the deficiencies of the Singleton Plan, Congresswoman Sewell certainly does not endorse the "Pringle Plan" proposed by Representative Pringle. But understanding that the Plaintiffs are focused on exploring those deficiencies, Congresswoman Sewell has no desire to burden the Special Master with cumulative briefing.

elections for which data is provided, the BPC will only prevail by a razor thin margin, *i.e.,* by less than 1 percent.  The BPC barely prevails with a margin of more than 1% in three of the elections for which data was provided.

The bottom line: in seven out of ten of the elections that the Singleton plaintiffs themselves put forth and for which they provided data, either Black voters would be unable to elect their candidate of choice or the election of a BPC would be a toss-up.  The BPC only has a solid margin of victory in three of the ten elections for which data has been provided.

This is hardly surprising given that the Singleton Plan cuts BVAP in Congresswoman Sewell's current district from about 60% to 40% in the new proposed Jefferson County district, "CD 6."  What justifies this 20% reduction in BVAP and slicing of the margin of victory by 13%?  The Singleton plaintiffs contend that this result is mandated by an imperative not to split Jefferson County.  The contention is not credible.

The Singleton plaintiffs' effort to assure the Special Master that a BPC would have a 54% chance of prevailing in CD 6 rings hollow.[3]  A 4% margin (even accepting the Singleton plan's data as valid) is hardly reassuring.  To be sure, in her most recent election, Congresswoman Sewell received about 63% of the vote—a 9% drop from the support she received in the 2010 election, the Singleton Plan's baseline to forecast BPC electoral success.

Congresswoman Sewell, a BPC, serves in Congress in a district that includes a split Jefferson County and has done so for a dozen years.  Any suggestion that a split of Jefferson County constitutes a per se racial gerrymander is therefore without foundation.

---

[3] 41.5% (Jefferson County BVAP) + 12.6 (Sewell's lead in 2010) = 54.1%.  *See* Singleton Br. at 12−13.

District 7 was created in 1992 to cure a Section 2 Voting Rights Act violation, and after it was created, Alabama elected its first black congressman since 1877.  The notion that it is necessary to keep Jefferson County in a single district in order to preserve a Black opportunity district is misguided.

In their passionate support for a district that contains the entirety of Jefferson County, the Singleton plaintiffs ignore the basic facts of political life.  They would push some of the most conservative precincts in the state into the district encompassing Jefferson County—those who have historically shown little inclination to vote for a BPC— while separating Black communities that stretch from Jefferson County to neighboring counties, *e.g.*, Black voters in Selma.  The result is, at best, a "toss-up" district, not a secure Black opportunity district.

The Special Master should set aside the Singleton plaintiffs' Plan and adopt the VRA Plaintiffs' Plan ("VRA Plan") so as to effectuate the goal that this Court (as approved by the Supreme Court) has articulated:  the creation of a Black opportunity congressional district in Alabama, in addition to the majority-minority district that is CD 7.

## I. THE SINGLETON PLAINTIFFS ELIMINATE A DISTRICT IN WHICH BLACK PREFERRED CANDIDATES ARE LIKELY TO BE ELECTED

### A. The Singleton Plaintiffs Have Replaced a Secure Black Opportunity District with a District that is at Best a Toss-Up

The Singleton plaintiffs contend that a Jefferson County District[4] will constitute a reliable Black opportunity district.  *See generally* Singleton Br.  But their own data reveals that this is not the case.

---

[4] The Singleton plaintiffs describe their proposed CD 6 as including "all of Jefferson County and just enough of northern Shelby County to equalize population . . . ."  Singleton Br. at 7.  Given that the Singleton plaintiffs brief is dedicated to justifying a district that contains an un-split Jefferson

Table 1 below presents the likely election results based on the data that the Singleton plaintiffs have themselves provided. The Singleton plaintiffs have looked to state wide elections (the Election Data Sets) going back to 2012 and then considered the votes in the precincts that constitute their proposed CD 6, which encompasses Jefferson County. *See* Singleton Br. at 8. The Singleton plaintiffs identified the pertinent elections in their Brief, and then further identified the subset of elections that included both Black and white candidates. *See id.* at 9–10. For purposes of Table 1, we have only included those biracial elections.

In their August 9, 2023 submission, *see* case no. 21-cv-1291, Dkt. No. 169-13 ("Exhibit 13"), the Singleton plaintiffs included their estimate of how their proposed District 6 would vote under each of the Election Data Sets. Table 1 only includes those Election Data Sets for which the Singleton plaintiffs provided estimates in their Exhibit 13—a total of ten Election Data Sets.[5] The data can therefore be displayed as follows:

---

County, for the sake of simplicity the Singleton proposed CD 6 is referred to as the "Jefferson County District" in this brief.

[5] Singleton plaintiffs purport to rely on 12 elections in their September 11, 2023 Brief. Singleton plaintiffs, however, only provided data for ten elections. *See* Dkt. No. 169-13.

**TABLE 1**

| Election Data Set | Jefferson County District % BPC |
|---|---|
| 2012 President | 51.2% |
| 2014 Lieutenant Governor | 48.1% |
| 2014 Auditor | 48.4% |
| 2018 Lieutenant Governor | 54.6% |
| 2018 Auditor | 55.2% |
| 2022 Senate | 50.6% |
| 2022 Governor | 49.1% |
| 2022 Attorney General | 50.7% |
| 2022 Secretary of State | 51.0% |
| 2022 Associate Justice | 50.8% |

Thus, using the data the Singleton plaintiffs submitted, it appears that the BPC loses in three out of ten elections (highlighted in red on Table 1). Moreover, the BPC wins by less than 1% in four other races (highlighted in yellow). They only prevail by more than 1% in three elections (highlighted in blue).

Apparently, counting an election for which data has not yet been provided, the Singleton plaintiffs concede that the BPC would lose under four of the Election Data Sets. *See* Singleton Br. at 10–11. If that admission is considered, then it a appears that the BPC is at risk of losing or winning by less than one percent in eight of the 11 election data sets that the Singleton plaintiffs contend they have relied on, *i.e.*, BPCs are at risk under 73% of the Election Data Sets. If one considers only elections for which data was actually provided, BPCs are at risk under 70% of those Election Data Sets.

5

**B.     The Singleton Plaintiffs Achieve this Result by Slashing the Black Voting Age Population in District 7 and Virtually Eliminating the BPC's Margin of Victory**

These likely results are hardly surprising.  The Singleton plaintiffs' Jefferson County District contains, by their admission, a BVAP of 39.6%.  *Id*. at 7, 12.  By contrast, Congresswoman Sewell's current district, CD 7, has a BVAP of about 60%.  *Id*. at 12.

Still, the Singleton plaintiffs project that a BPC would likely obtain sufficient support from white voters to prevail with about a 54% margin.  *Id*. at 12.  To arrive at this result, the Singleton plaintiffs use the 72.4% vote share Congresswoman Sewell received in 2010.  *Id*.  Their argument suffers from two flaws: one geographic and the other temporal.

**1.     Comparing Performance in a 60% BVAP District with Expected Performance in a 40% BVAP District Is Misleading**

As an initial matter, the Singleton plaintiffs are comparing apples and oranges. They are comparing past performance in an existing Congressional District that combines portions of Jefferson County and portions of the Black Belt with their proposed Jefferson County District (which unites Jefferson County and adds 6% from Shelby County).  As set forth above, the demographics of these two districts are materially different.  The existing Congressional District 7 has a BVAP of about 60%, but Singleton plaintiffs' proposed Jefferson County district has a BVAP of about 40%.

**2.     Use of 2010 Election Results Is Misleading**

Citing  to 2010 election results fails to recognize the current political reality for Black Voters in Alabama.  In particular, the Singleton plaintiffs conveniently leave out the data from the post-Trump era, including the results in the most recent congressional election. Former President Trump's impact on Republican turnout has shifted the

political balance in much of the state, even in the Democrat leaning CD 7 currently represented by a BPC.

In the 2022 Election, Congresswoman Sewell had two general election opponents, Republican Beatrice Nichols and Libertarian Gavin Goodman.  In 2022, she won with 63.5% of the vote, Alabama Seventh Congressional District Election Results, N.Y. Times, Nov. 28, 2022, available at https://www.nytimes.com/interactive/2022/11/08 /us/elections/results-alabama-us-house-district-7.html,  down more than 12 points from her last contested general  election in 2012 when she won with 75.8%.  *See* Ian Lovett, Election 2012: Alabama, N.Y. Times, available at https://www.nytimes.com/ elections/2012/results/states/alabama.html.  The BVAP in CD 7 was 63.6% in 2012 and dropped to 55.3% in 2022, an 8.3 percentage point drop.  *See* Case No. 21-cv-1530, Dkt. No. 1 ¶ 172.  Congresswoman Sewell's decline in performance of 12 points over the decade exceeded that of the BVAP decline during that period by almost 4 percentage points.

The Singleton plaintiffs, nevertheless, assert that since Congresswoman Sewell outperformed District 7's BVAP by 12.6 percentage points in 2010, a Black candidate today would outperform in the Singleton plaintiffs' proposed Jefferson County District by the same margin, winning by four percentage points.  Singleton Br. at 12.  This is an unwarranted interpretation of the data and also represents a misunderstanding of how our politics have evolved in the wake of former President Donald Trump.  Again, the Singleton plaintiffs do not substantiate this claim with any recent data from congressional races in Alabama.  Based on the increased racial and political polarization in Alabama over the last decade, the assumption that a Black Democrat would win by the same margin in 2024 as 2010 is not credible.

**C.** **The Singleton Plaintiffs Misstate the History of Racially Polarized Voting in Jefferson County**

The Singleton plaintiffs' assertion that there is significant crossover voting in Jefferson County does not withstand scrutiny when the specifics of the data are considered. To be sure, there are some precincts in the more affluent communities of Homewood and Mountain Brook where crossover voters exist. *See* Alabama Elections Data (referring to data from Jefferson County precincts 2095, 2350, 5240 and 5280). The same, however, cannot be said for the majority white precincts in North Jefferson and North Shelby Counties, where voters are overwhelmingly Republican. *See id.* (referring to data from Jefferson County precincts 4105, 3180, 3100 and Shelby County precincts 18 and 14). Put simply, there are certain rural precincts in the county that have voted reliably against BPCs for the past decade. *See* Alabama Secretary of State Elections Data Downloads, available at https://www.sos.alabama.gov/alabama-votes/voter/election-data (referring to data from Jefferson County precincts 4015, 3180, and 3100) (hereinafter "Alabama Elections Data"). Yet it is those very precincts that the Singleton plaintiffs would add to their proposed undivided Jefferson County District.[6]

The data shows that voters in North Jefferson and North Shelby counties are voting for Republicans (unlikely to include BPCs) at rates nearly as high as voters in Bessemer and Birmingham City are voting for Democrats. *See id.* (referring to data from Jefferson County precincts 4015, 3180, 3100, Shelby County precincts 18 and 14, and Birmingham and Bessemer precincts 1210 and 2120). In fact, North and South Jefferson county are

---

[6] Not surprisingly, Dr. Liu, when analyzing the iteration of CD 7 in the VRA Plan, notes a high degree of racially polarized voting in a district centered in Jefferson County. *See* Liu Report, Dkt. No. 7-2, Table 3 (filed September 11, 2023). ("My conclusion is that voting is highly racially polarized").

nearly exact political opposites, with the northern part of the county more similar to the (conservative Republican) counties to the north of Jefferson, while Birmingham is more closely aligned politically with the Black Belt counties to the South.

Not surprisingly, the very authors of the Singleton plan (*i.e.*, Campaign Legal Center, or "CLC"), upon looking at more recent data regarding racially polarized voting, have concluded that there is indeed significant racially polarized voting in Jefferson County. *See* September 13, 2023 CLC Brief, Dkt. No. 13, 4-5.  Accordingly, CLC now supports the VRA Plan. *Id.*

> **D.    Shelby County and Birmingham Are Not a Community of Interest**

CD 6 in the Singleton Plan puts residents of North Jefferson and North Shelby counties in the same district as those in Birmingham City.  This is not a community of interest.  Shelby County is the wealthiest county in Alabama, with much of the wealth there concentrated in the precincts that the Singleton Plan includes in CD 6.  The citizens of Birmingham neighborhoods like Ensley have more in common with their neighbors to the South in Alabama's Black Belt than they do with communities like Indian Springs Village in North Shelby or Warrior in North Jefferson, where citizens vote Republican 70% or more of the time.

> **II.    THE VRA PLAN WOULD CREATE TWO DISTRICTS IN WHICH BLACK PREFERRED CANDIDATES ARE LIKELY TO BE ELECTED**

In stark contrast, the VRA Plan establishes a strong Black Opportunity District based in Jefferson County but also encompassing areas of certain nearby counties (as is presently the case).  The VRA Plan provides for a district where the BPC is likely to obtain about 64% of the vote.  *See* Dkt. No. 7-2 at Table 4 ("Liu Report").

The VRA Plan proposed CD 7 is consistent with the present configuration of CD 7. It continues to keep the important population centers of Birmingham and Selma united in one district. *See* case no. 21-cv-1291, Dkt. No. 169-23.  And while it modestly reduces the BVAP percentage from about 60% to about 55% it avoids the drastic reduction (to about 40%) proposed by the Singleton plaintiffs. *See* Dkt. No. 7-3 at 3 ("Duchin Report"). Not surprisingly, the Palmer Report also concludes that the BPC is likely to prevail consistently under the VRA Plan district, anchored in Selma and Birmingham.  *See* Dkt. No. 7-1 at at 1–2 ("Palmer Report").

## III.   A JEFFERSON COUNTY DISTRICT, SEPARATED FROM THE BLACK BELT, IS NOT REQUIRED TO CREATE A BLACK OPPORTUNITY DISTRICT

The Singleton plaintiffs contend that their map of CD 6 advances the cause of racial justice by separating Birmingham from the Black Belt because it avoids any splits of Jefferson County.  *See* Singleton Br. at 18; case no. 21-cv-1291, Dkt. Nos. 169-13 at 2, and 189 ¶ 84.  On the contrary, existing CD 7—which does split parts of Jefferson County and unites them with portions of the Black Belt—*is* Alabama's Civil Rights district, comprising Birmingham, Selma, Lowndes County, and Montgomery, each of which played a unique role in the civil rights and voting rights movements.

To advocate for an un-split Jefferson County District, the Singleton plaintiffs contend that: (a) the pre-1992 map, in which Jefferson County was not split, provides an appropriate model; (b) that Jefferson County does not have a sufficiently common interest with counties in the Black Belt to include them in the same congressional district; (c) that the combination of Jefferson County and Black Belt counties has operated to the detriment of the latter.  None of these contentions withstand scrutiny.

### A.      The Pre-1992 District Is Not a Model this Court Should Endorse

The Singleton plaintiffs would turn back the clock to 1992, stating that their plan "reduces splits to a level not seen since 1992." Singleton Br. at 16.  The pre-1992 map, however, is not to be emulated.  As the Milligan plaintiffs wrote in their initial complaint, "CD 7 has existed in roughly its current form since 1992, when a federal court drew it as a majority Black district to resolve allegations of malapportionment and that Alabama had violated the VRA."  Case No. 21-cv-1530, Dkt. No. 1 ¶ 169.  History demonstrates the wisdom of that decision.

Earl F. Hilliard was consequently elected in 1992 as the first Black member of the Alabama delegation since Reconstruction.  *See* Earl Hilliard, CBC Institute, available at https://www.cbcinstitute.org/earlhilliard.  Prior to Hilliard, the last Black member of Congress in the Alabama delegation was Republican Jeremiah Haralson, who was born into slavery.  He was elected in 1875, ten years after Alabama's ratification of the 13th Amendment mandated his freedom.  The gap between when Haralson left Congress in 1877 and when Hilliard was elected in 1992 was 117 years.

Thus, it was only when the map of the district was redrawn by a federal court in 1992 that Black voters were able to again elect the candidate of their choice, *see Allen v. Milligan*, 143 S. Ct. 1487, 1501 (2023), ending a more than century-long drought for Black candidates and voters in Alabama politics.  CD 7 has been represented by Black candidates since Hilliard's election in 1992.

### B.      Birmingham and the Black Belt are a Community of Interest United in America's Civil and Voting Rights District

Congresswoman Sewell's experience shows that Birmingham and the Black Belt benefit from being in the same congressional district and that they are a community of

interest.  It is not uncommon for Congresswoman Sewell's office to leverage resources in Birmingham for rural communities in the Black Belt.  For example, when a rural hospital in the Black Belt requested assistance from Congresswoman Sewell's office to stay open, she called on the leadership at UAB Health System, the largest hospital system in the state, to provide guidance and resources to the smaller hospital. The rural hospital entered into a management agreement with UAB and the hospital is still open today. Since then, UAB has used this model to help other rural hospitals in CD 7 by bringing them into their more stable Health System.  On another occasion, Congresswoman Sewell's office helped UAB researchers secure a grant to study the health implications of poor wastewater infrastructure in rural Lowndes and Wilcox Counties.  Her office also led the effort to organize engineering experts from the University of Alabama, Auburn University, and the University of South Alabama to work on solutions to the wastewater crisis in Lowndes County.  The Consortium for Alabama Rural Water and Wastewater Management was created through this partnership.  The Consortium was formed to facilitate collaboration between the state's top academic institutions, community groups, and Alabama's regulatory agencies for the purpose of identifying solutions to wastewater infrastructure issues in rural Alabama.

These are just a few concrete examples of how Congresswoman Sewell's office has incorporated partners from the urban areas of CD 7 to help address infrastructure or economic challenges in the Black Belt.

### C.      Congresswoman Sewell's Record Securing Wins for Rural and Urban CD 7

The Singleton plaintiffs, however, write: "Since 1992, the relatively urban portion of Jefferson County has had to share a district with much of the rural Black Belt, to the

detriment of both communities of Interest." Singleton Br. at 18. They restate Senator Singleton's previous claim that "having one person represent both urban Birmingham and the rural Black Belt in Congress prevents that person from being a truly effective advocate for either one." *Id.* The Singleton plaintiffs, however, present no evidence to support their claim.

As Congresswoman of CD 7 for 12 years, Congresswoman Sewell, who was raised in Selma, takes great pride in being a daughter of Alabama's Black Belt. Her office has been successful in securing wins for both the rural and urban communities in CD 7, and she contests the allegation that one is a detriment to the other. Congresswoman Sewell has offices in Birmingham, Montgomery, Selma, and Tuscaloosa and allocates official time and resources equitably across the rural and urban parts of her district. She hosts numerous district events and tours in all 14 counties of the district annually. Her signature district event is the Annual Job Fair, which is rotated between rural and urban areas each August.

There is no support for the Singleton plaintiffs' claim that splitting Birmingham from the Black Belt is required to create "focused representation," and the corresponding allegation that "focused representation" is currently lacking. *Id.* at 18. The facts are to the contrary. A few examples make this clear:

- Congresswoman Sewell has secured an increase in funding for the National Park Service's Historic Preservation Fund via the congressional appropriations process, funds that advantage the Black Belt portion of her district. Her office ensured that entities in CD 7 applied for the funding she secured in the federal program.

- In 2019, her office was successful in securing $2.9 million for 10 projects across CD 7 through the African American Civil Rights grants program. This amounted to almost 25% of the funding allocated nationally under this program. Entities in the Black Belt counties of Dallas and Perry received

$1.6 million, while the remaining $1.3 million went to projects in Birmingham and Montgomery.

- In 2021, the 10-year moratorium on earmarks in Congress was lifted and members were able to secure Community Project Funding requests for their districts. In the FY2022 funding bill, Congresswoman Sewell secured $7.8 million for projects in CD 7. Of the 8 funded projects, 3 were in the rural Black Belt, 3 were in Jefferson County, and 2 were in Tuscaloosa County. *See* Congresswoman Sewell Press Release, Rep. Sewell Secures Over $7.8 Million for Community Projects in Alabama's 7th District in House's FY2022 Government Funding Bills, July 30, 2021, available at https://sewell.house.gov/press-releases?ContentRecord_id=DB72D00A-B308-4B89-A912-FCCDF17AF3C3.

- In 2022, her office was successful in securing $2.5 million through the Historic Preservation Fund for HBCUs in both rural and urban CD 7.

- During the FY2023 appropriations cycle, Congresswoman Sewell submitted 15 community projects to the Appropriations Committee. Of these 15 projects, 8 were in rural Black Belt counties, 3 were in Montgomery County, and 4 were in Jefferson County. Her office submitted nearly the same ratio of rural and urban projects for the FY2024 appropriations process. *See* Congresswoman Sewell Press Release, FY24 Community Project Funding – Terri A Sewell Appropriations Requests, available at https://sewell.house.gov/community-project-funding.

- In 2016, Congresswoman Sewell introduced legislation and led the effort to create a national park designation for Birmingham.  In one of his last acts as President, Barack Obama signed a proclamation based on Congresswoman Sewell's legislation creating the Birmingham Civil Rights National Monument. *See* Howard Koplowitz, Sewell Champions Bill to Create National Park Designation for Birmingham, Alabama News, Mar. 22, 2016, available at https://www.al.com/news/2016/03/sewell_champions_bill_to_creat.html.

- Congresswoman Sewell began introducing the Alabama Black Belt National Heritage Area Act in the 113th Congress.  She introduced it each Congress until it passed both chambers in December 2022 and was designated in January 2023.  Thanks to this National Heritage Area designation, the 14 counties of Alabama's Black Belt will enjoy new funding and tourism opportunities that would otherwise not be realized. *See* Congresswoman Sewell Press Release, Rep. Sewell's Legislation Designating Alabama's Black Belt as a National Heritage Area Passes the house and Senate, Dec. 22, 2022, available at https://sewell.house.gov/2022/12/rep-sewell-s-legislation-designating-alabama-s-black-belt-as-a-national-heritage-area-passes-the-house-and-senate.

These are just some of the numerous examples countering Senator Singleton's claim that "having one person represent both urban Birmingham and the rural Black Belt in Congress prevents that person from being a truly effective advocate for either one." *Id.* Further, as noted by the three judge panel of this Court in its January 24, 2022 Order, the state's own witness, Congressman Bradley Byrne, "described his experiences working with Congresswoman Sewell," and testified "that they worked together 'all the time,' and gave examples of that effort; he also described his time as co-chair of the HBCU Congressional Caucus and his work with community health centers." Prelim. Inj. Memo. Op. and Order, Dkt. No. 107 at 115.  When asked about "representatives who represent districts that span multiple counties and include both rural and urban areas," such as, "Congresswoman Sewell and Congressman Palmer," Mr. Byrne "replied that he has 'never heard anybody criticize either one of them for what they do for their district," describing Congresswoman Sewell as "[v]ery effective." *Id.*

## CONCLUSION

For the foregoing reasons, the Special Master should reject the remedial plan set forth by the Singleton plaintiffs and adopt the VRA Plan.

Dated: September 13, 2023                    Respectfully submitted,


J. MARK WHITE                          */s/ Robert Fram*
White Arnold & Dowd                    ROBERT FRAM
2001 Park Place North, Suite 1400      *Counsel of Record*
Birmingham, Alabama 35203              Covington & Burling LLP
Birmingham, AL 35203                   415 Mission Street, Suite 5400
205-323-1888                           San Francisco, CA 94105-2533
mwhite@whitearnolddowd.com             (415) 591-7025
                                       rfram@cov.com

                                       PAULINA SLAGTER
                                       Covington & Burling LLP
                                       850 Tenth Street, NW
                                       Washington, DC 20001-4956
                                       (202) 662-5929
                                       pslagter@cov.com

                                       BENJAMIN KLEIN
                                       Covington & Burling LLP
                                       620 Eighth Avenue
                                       New York, NY 10018-1405
                                       (212) 841-1000
                                       bklein@cov.com

                                       *Counsel for Congresswoman Terri Sewell*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 13, 2023, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system and caused to be

served by email a copy of this filing to counsel of record.

By *<u>/s/ Robert Fram</u>*
Robert Fram