IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE REDISTRICTING 2023 SPECIAL MASTER | Misc. No. 2:23-mc-1181-AMM |

*CASTER* AND *MILLIGAN* PLAINTIFFS' BRIEF IN OPPOSITION TO REMEDIAL PROPOSALS

I. Introduction

On September 11, the *Caster* and *Milligan* Plaintiffs submitted the VRA Plaintiffs' Remedial Plan ("VRA Plan") as a proposed remedy to the State's likely violation of Section 2 of the Voting Rights Act. As explained in that brief, the VRA Plan remedies Alabama's likely Section 2 violation in a manner that is both lawful and consistent with the State's own redistricting traditions. Having now reviewed the remaining Party and Non-Party remedial submissions, the *Caster* and *Milligan* Plaintiffs can further assert that the VRA Plan is the best of all nine plans submitted to the Special Master. The VRA Plan is the only submitted plan that places all eighteen core Black Belt counties into two opportunity districts, preserves the core of the State's enacted 2021 Plan to the greatest extent possible, and provides Black

voters with a consistent opportunity to elect the candidates of their choice, regardless of the race of their preferred candidate.

The remaining plans submitted to the Special Master fall short on one or more of these criteria. In particular, plans submitted by Representative Pringle and the Singleton parties both fail to ensure that the District Court's order is met through the addition of a second opportunity district, and the Singleton Plan pairs the only Black member of Alabama's congressional delegation against a white incumbent and splits the Black Belt across three districts.

For these reasons, and those expressed below, the *Caster* and *Milligan* Plaintiffs respectfully submit that the VRA Plan remains the only plan that comprehensively addresses the District Court's order and all relevant criteria.

## II. Rep. Pringle's "Community of Interest" Plan

The Special Master should reject the so-called "Community of Interest" plan, submitted by Defendant Rep. Chris Pringle, House Chair of the Alabama Legislature's Reapportionment Committee (the "Pringle Plan").

First and foremost, the Pringle Plan does not remedy Alabama's likely Section 2 violation for a very simple reason: it does not include two districts in which Black voters have an opportunity to elect their candidates of choice.

Dr. Maxwell Palmer—the *Caster* expert—analyzed the same 17 statewide elections held between 2016 and 2022 that he analyzed for the VRA Plan. *See* Ex.

1, Palmer Report at 1. Black-preferred candidates would have won the Pringle Plan's CD-7 in all seventeen races. *Id.* at 2-3. In CD-2, however, Dr. Palmer found that Black-preferred candidates would have lost *fourteen* of those seventeen elections. *Id.* Put another way, Black-preferred candidates in the Pringle Plan's CD-2 would have been defeated by white-preferred candidates more than 76% of the time. Even in the four elections that the Black-preferred candidate won, those candidates were always *white* and they won by very slim margins. *Id.*

Dr. Baodong Liu—the *Milligan* expert—analyzed eleven statewide general elections between Black and white candidates held between 2014 and 2022. *See* Ex. 2, Liu Report at 1; *see also* ECF No. 7. While Black-preferred candidates won all eleven elections in CD-7, Dr. Liu found that the Black candidate would have won *zero* of the biracial elections in CD-2 of the Pringle Plan. Ex. 2, Liu Report at 2. This "evidence drawn from elections involving black candidates is more probative" than elections that involve only white candidates. *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1293 (11th Cir. 2020) (citation omitted); *accord Solomon v. Liberty Cty. Comm'rs*, 221 F.3d 1218, 1227 (11th Cir. 2000) (en banc). This is because Section 2's "guarantee of equal opportunity is not met when candidates favored by blacks can win, but only if the candidates are white." *Sanchez v. Colorado*, 97 F.3d 1303, 1321 (10th Cir. 1996) (cleaned up); *see also Jeffers v. Clinton*, 730 F. Supp. 196, 209 (E.D. Ark. 1989) (three-judge court), *aff'd mem.*, 498

U.S. 1019 (1991). As such, the State's proposed remedial district indisputably fails to give Black voters an opportunity "to elect representatives of their choice." 52 U.S.C. § 10301(a)-(b).

Nor does the fact that the Pringle Plan was proposed by a state *legislator* entitle it to any deference, let alone the type of deference often accorded to plans enacted by a state *legislature*. ECF No. 6 at 1 (explaining it was "approved by the Reapportionment Committee and passed by the House of Representatives but not by the Senate"). At best, the Pringle Plan is the State House's "proffered" plan and, absent approval by the Alabama Senate and signature by the Governor, does not reflect "the State's policy." *Sixty-Seventh Minn. State S. v. Beens*, 406 U.S. 187, 197 (1972); *see also Garza v. Cnty. Of Los Angeles*, 918 F.2d 763, 776 (9th Cir. 1990) (concluding that district court was not required to defer to a plan because "the proposal was not an act of legislation; rather, it was a suggestion by some members of the Board"); *Essex v. Kobach*, 874 F. Supp. 2d 1069, 1084 (D. Kan. 2012) ("[W]e owe no deference to any proposed plan, as none has successfully navigated the legislative process to the point of enactment."); *Carter v. Chapman*, 270 A.3d 444, 460-61 (Pa. 2022), *cert. denied sub nom. Costello v. Carter*, 143 S. Ct. 102 (2022) (declining to defer to legislature's proposal that only "made it partway through the

legislative process").[1]

### III.  Singleton Plan

The Special Master should reject the proposed plan submitted by the *Singleton* Plaintiffs (the "Singleton Plan"). Although the Singleton Plan may appear to perform at first glance, *see* Ex. 1, Palmer Report at 4-5, those numbers elide significant performance- and policy-related deficiencies. For example, Dr. Liu analyzed the Singleton Plan's performance in the same eleven biracial statewide elections held between 2014 and 2022. Ex. 2, Liu Report at 1. Dr. Liu concluded that in CD-6 of the Singleton Plan, the Black candidate would have won only *seven* of these eleven elections—well below the VRA Plan's CD-2, in which the Black candidate would have won *nine* of the eleven elections. *Id.* at 2. Dr. Liu's analysis from a recent successful Section 2 challenge to the Jefferson County school board also shows that Black candidates lost Jefferson County (which constitutes nearly all of the Singleton Plan's CD-6) to white opponents in elections for the U.S. Senate in 2008, county

---

[1] Notably, courts often adopt plans proposed by Voting Rights Act plaintiffs as remedies to Voting Rights Act violations. *See, e.g.*, *Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1022-24 (8th Cir. 2006) (affirming district court's decision to impose the plaintiffs' proposed state legislative districting plan to remedy Section 2 violation); *Missouri State Conf. of the N.A.A.C.P. v. Ferguson-Florissant Sch. Dist.*, 219 F. Supp. 3d 949, 961 (E.D. Mo. 2016) (rejecting state defendant's remedial proposal and adopting plaintiffs' proposed Section 2 remedial plan); *Montes v. City of Yakima*, No. 12-CV-3108-TOR, 2015 WL 11120964, at *11 (E.D. Wash. Feb. 17, 2015) (same); *Baldus v. Members of Wis. Gov't Accountability Bd.*, 862 F. Supp. 2d 860, 863 (E.D. Wis. 2012) (three-judge court) (same); *Perez v. Texas*, No. 11-CA-360-OLG-JES-XR, 2012 WL 13124275, at *5 (W.D. Tex. Mar. 19, 2012) (three-judge court) (reconfiguring a state house district "in the same general manner as the plaintiffs request" to remedy a likely Section 2 violation); *Jeffers v. Clinton*, 756 F. Supp. 1195 (E.D. Ark. 1990) (three-judge court), *aff'd mem.*, 498 U.S. 1019 (1991) (approving state board's proposed districts only with the plaintiffs' modifications to remedy Section 2 violations).

attorney in 2010, and the school board's at-large multimember district in 2018. *See Jones v. Jefferson Cty. Bd. of Educ.*, No. 2:19-CV-01821-MHH, 2019 WL 7500528, at *2 (N.D. Ala. Dec. 16, 2019) (crediting Dr. Liu's testimony and finding that "White people vote sufficiently as a bloc to enable them to defeat Black voters' preferred candidates" in the at-large Jefferson County school board elections).

The uncertainty of CD-6's performance for Black candidates is especially important given that the Singleton Plan would place Congresswoman Terri Sewell—the only Black member in Alabama's current congressional delegation—in the majority-white CD-6, and then, too, pair her against a white incumbent. While the *Singleton* parties refer to the "potential" for "congressional candidates to perform better than statewide candidates," ECF No. 5, at 12, this assertion about "potential" performance in their new proposed district is purely speculative.[2]

In fact, a rough estimate of the actual 2022 congressional election results in Jefferson County only deepens the *Caster* and *Milligan* Plaintiffs' concerns. In 2022, Congresswoman Sewell, the Black incumbent, received 58,125 votes in Jefferson County, and her white opponent, Beatrice Nichols, received 19,900 votes.[3]

---

[2] For example, the Singleton Plaintiffs cite as evidence that in the Singleton Plan's CD 6, Black candidates received more votes than their counterparts 67% of the time. ECF No. 5 at 10-11. But there is no local RPV analysis of CD 6 suggesting a BVAP of 39.61% could ever perform for Black-preferred candidates.
[3] "Jefferson County 2022 Elections Official Results," *available at* https://jeffcoprobatecourt.com/wp-content/uploads/2022/11/General-Election-11-8-2022-Summary-Report-official-Jefferson-County.pdf

Congressman Gary Palmer, the white incumbent from CD-6 of Alabama's current congressional delegation—which includes parts of Jefferson and Shelby Counties—received 73,859 votes from Jefferson County alone in his uncontested election.[4] Even if one were to assign every "undervote" from that uncontested race to Congresswoman Sewell, she still received far fewer votes than the combined votes of Congressman Palmer and Ms. Nichols in Jefferson County and, thus, likely would have lost the 2022 election with only 47% of the vote in the Singleton Plan.[5]

Moreover, unlike the VRA Plan, the Singleton Plan starkly deviates from the 2021 enacted congressional plan. It also splits the Black Belt into three districts and divides the Black Belt from Mobile, all the while failing to establish two districts where Black Alabamians have reliable opportunities to elect their candidates of choice in congressional elections. *Cf. Singleton v. Allen*, No. 2:21-CV-1291-AMM, 2023 WL 5691156, at *63 (N.D. Ala. Sept. 5, 2023) (three-judge court) (faulting Alabama's 2023 plan for failing to increase minority opportunities). The VRA Plan, by contrast, unites the Black Belt in two districts, one of which includes Mobile, and remedies the likely Section 2 violation without unnecessarily moving voters into

---

[4] *Id*.

[5] "Undervote" means that a voter cast a vote for other races on the ballot but declined to vote for Congressman Palmer or a third-party candidate in the uncontested 2022 CD-6 race. It is calculated by subtracting the total votes for Congressman Palmer and third-party candidates from the total number of ballots cast in the precinct. *See* "Jefferson County 2022 Official Results - Precinct Reports," *available at* https://jeffcoprobatecourt.com/wp-content/uploads/2022/11/General-Election-11-8-2022-Precinct-Report-official-Jefferson-County.pdf.

new congressional districts all over the state. *See* Pls.' Br. at 7, ECF No. 7.

## IV. Non-Party Submissions

The Special Master also received proposals from non-parties Hillyer, Alabama Democratic Conference ("ADC"), McCrary (two plans), and Grofman (two plans). The *Caster* and *Milligan* Plaintiffs have not had sufficient time to review the six new proposals in detail, but Dr. Palmer has completed a performance analysis of each plan, using the same 17 elections that he used to analyze the Parties' submissions, Ex. 1, Palmer Report at 1, and Dr. Liu conducted preliminary analyses of the Grofman plans, Ex. 2, Liu Report at 3. Notably, the Hillyer Plan and the Grofman "2021 Minimum Change" Plan each contain a remedial district in which Black voters' candidates of choice would have won *zero* of the five statewide elections in 2022—all of which were biracial elections that featured a Black-preferred Black candidate running against a white-preferred white candidate. Ex. 1, Palmer Report at 6-7, 14-15; *see also* Ex. 2, Liu Report at 3 (discussing the Grofman plans). And the Grofman "2023 Minimum Change" Plan contains a remedial district in which Black voters' candidates of choice would have won only *two* of those five statewide elections in 2022. Ex. 1, Palmer Report at 16-17; *see also* Ex. 2, Liu Report at 3. There is therefore significant doubt that the Hillyer and Grofman plans satisfy the District Court's order to provide Black Alabamians a second district in which they have an opportunity to elect their preferred candidate.

V.   **Conclusion**

Plaintiffs respectfully urge the Special Master to recommend for adoption the VRA Plan as a remedy to the State's likely Section 2 violation.

Respectfully submitted this 13th day of September 2023.

/s/ Deuel Ross
Deuel Ross*
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org
tlockhead@naacpldf.org

Leah Aden*
Stuart Naifeh*
Ashley Burrell*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
Shelita M. Stewart*
Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com

/s/ Sidney M. Jackson
Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
    FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

Davin M. Rosborough*
Julie Ebenstein*
Dayton Campbell-Harris*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org
dcampbell-harris@aclu.org

Alison Mollman (ASB-8397-A33C)
AMERICAN CIVIL LIBERTIES UNION
OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754

| | |
|---|---|
| David Dunn* <br> HOGAN LOVELLS US LLP <br> 390 Madison Avenue <br> New York, NY 10017 <br> (212) 918-3000 <br> david.dunn@hoganlovells.com | Blayne R. Thompson* <br> HOGAN LOVELLS US LLP <br> 609 Main St., Suite 4200 <br> Houston, TX 77002 <br> (713) 632-1400 <br> blayne.thompson@hoganlovells.com |

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

*Counsel for Milligan Plaintiffs*

Janette Louard*
Anthony Ashton*
Anna Kathryn Barnes*
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Counsel for Plaintiff Alabama State Conference of the NAACP*

*\* Admitted Pro Hac Vice*

Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies & Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
Email: rrouco@qcwdr.com

By: /s/ *Abha Khanna*
Abha Khanna*
Makeba Rutahindurwa*
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Phone: (206) 656-0177
Email: AKhanna@elias.law
Email: MRutahindurwa@elias.law

Lalitha D. Madduri*
Joseph N. Posimato*
Jyoti Jasrasaria*
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Phone: (202) 968-4490
Email: LMadduri@elias.law
Email: JPosimato@elias.law
Email: JJasrasaria@elias.law

*Admitted Pro Hac Vice*

*Counsel for Caster Plaintiffs*

- 11 -