IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, *et al.*, <br><br> Plaintiffs, <br><br> WES ALLEN, *et al.* <br><br> Defendants. | No. 2:21-cv-01530-AMM <br> Three-Judge Court |

### *MILLIGAN* PLAINTIFFS' BRIEF IN SUPPORT OF
### SPECIAL MASTER PLANS 1 AND 3

The *Milligan* Plaintiffs respectfully request that the Court adopt the Special Master's Remedial Plan 1 or Remedial Plan 3 to cure Alabama's likely violation of § 2 of the Voting Rights Act ("VRA"). Both Remedial Plans 1 and 3 (1) completely remedy the likely § 2 violation; (2) comply with the VRA and United States Constitution, including the one-person, one-vote principle; and (3) reasonably respect traditional redistricting principles as well as state redistricting guidelines to the extent those state guidelines do not themselves perpetuate the likely violation. In contrast, Plaintiffs oppose the Court's adoption of Remedial Plan 2 because it fails to completely remedy the likely § 2 violation because it fails to reliably provide Black voters an opportunity to elect a candidate of their choice in an additional district.

1

## STANDARD

To remedy Alabama's likely § 2 violation, the Court ordered the Special Master to consider certain criteria. Order, Doc. 273 at 7-9.[1]

First and foremost, the remedial plan must "[c]ompletely remedy the likely Section 2 violation," meaning that the remedy "shall include either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Id*. at 7 (cleaned up); *accord League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 428 (2006); *United States v. Dall. Cnty. Comm'n*, 850 F.2d 1433, 1442 (11th Cir. 1988).

Next, the Court's plan must itself comply with the VRA and U.S. Constitution, including the one-person-one-vote principle. Order, Doc. 273 at 7-8.

Finally, the remedial plan should respect the traditional redistricting criteria of "compactness, contiguity, respect for political subdivisions, and maintenance of communities of interest" to the "extent reasonably practicable." *Id*. at 8-9. Thus, "in the process of adopting reapportionment plans, the courts are forbidden to take into account the purely political considerations that might be appropriate for legislative bodies, such as incumbency protection and political affiliation." *Id*. at 9 (internal citation and quotations omitted).

---

[1] All docket numbers reference the *Milligan* docket.

2

## REMEDIAL PLANS 1 AND 3

Remedial Plans 1 and 3 satisfy all the required criteria.

First, both plans fully remedy Alabama's likely § 2 violation. In evaluating the effectiveness of the new opportunity district, "case law indicat[es] that evidence about biracial elections and endogenous elections is more probative of racially polarized voting than is evidence about other kinds of elections." *Milligan v. Merrill*, 582 F. Supp. 3d 924, 967 (N.D. Ala. 2022) (collecting cases), *aff'd sub. nom Allen v. Milligan*, 599 U.S. 1 (2023); *see also* 52 U.S.C. 10301(b) ("The extent to which *members of a protected class* have been elected to office in the State . . . is one circumstance which may be considered") (emphasis added); *Abrams v. Johnson*, 521 U.S. 74, 92-93 (1997) (relying on biracial elections to evaluate a remedial plan's compliance with § 2). This is because "§ 2's guarantee of equal opportunity is not met when candidates favored by blacks can win, but only if the candidates are white." *Sanchez v. Colorado*, 97 F. 3d 1303, 1321 (10th Cir. 1996) (cleaned up).

The Special Master examined the performance of congressional district 2 ("CD-2") in Remedial Plans 1 and 3 based on 11 biracial statewide elections that were conducted from 2014 to 2022. *See* Docs. 296-1 at 3 and 296-3 at 3. His analysis showed that the Black candidates who are preferred by Black candidates would have won 9 out of the 11 biracial elections in CD-2 of Remedial Plan 1 and 10 out of the 11 biracial elections in CD-2 of Remedial Plan 3. *Id*. In both Plans 1 and 3, the Black-

preferred candidate would have won all 11 biracial elections in CD-7. *Id.* More broadly, the Special Master's analysis of 17 elections total (inclusive of the 11 biracial elections) concluded that the Black-preferred candidate would have won election in 15 out of the 17 contests in Remedial Plan 1's CD-2 and 16 out of 17 contests in Remedial Plan 3's CD-2. Special Master R. & R., Doc. 295 at 31 ("Special Master Report"). Based on any relevant measure, Remedial Plans 1 and 3 fully and appropriately cure Alabama's likely § 2 violation. *See LULAC*, 548 U.S. at 428 (concluding that a potential district in which a minority-preferred candidate won 13 out of 15 races provided an "effective opportunity").

Next, Plaintiffs agree with the Special Master's conclusion that Remedial Plans 1 and 3 satisfy the U.S. Constitution's principles of one-person-one-vote and nondiscrimination. *See* Special Master Report at 33-36.

Finally, Plaintiffs agree with the Special Master that Remedial Plans 1 and 3 appropriately respect traditional redistricting criteria.[2] *Id.* at 14-20, 22-24. Plans 1

---

[2] While Plaintiffs fully support Remedial Plan 3, Plaintiffs assert that Plan 1 better respects communities of interest for two reasons. First, Plan 1 connects the cities of Mobile, Prichard, and Chickasaw with the Black Belt in CD-2; whereas Plan 3 excludes Prichard and Chickasaw from CD-2. *Compare* Remedial Plan 1, *id.* at 16, *with* Remedial Plan 3, *id.* at 24. This Court credited the testimony of Alabama Representative Samuel Jones, Mobile's former mayor, and Dr. Joe Bagley, Plaintiffs' expert, about the "intimate historical and socioeconomic ties that the City of Mobile and the northern portion of Mobile County, including Prichard, have with the Black Belt." Opinion, Doc. 272 at 66 (cleaned up). Plaintiffs Evan Milligan, Shalela Dowdy, and Dr. Marcus Caster gave similar testimony at the January 2022 hearing. *See Milligan*, 582 F. Supp. 3d at 966, 980; Jan. 4, 2022 Tr. 143-44 (Mr. Milligan testifying that Mobile and Prichard are "anchor cities" for the southwest Black Belt). Second, Plan 1 connects Dothan and Black Belt in CD-2. Special Master Report at 16, 21. This choice acknowledges the "substantial overlap between the Black Belt and the Wiregrass." Opinion, Doc. 272 at 167. It also respects the views of the public at the

4

and 3 are contiguous and reasonably compact under any measure. *Id*. at 36-38. Both plans respect political subdivisions and communities of interest. For example, Remedial Plan 1 splits only seven counties, and Plan 3 splits only six counties. *Id*. at 39. Both plans keep all 18 core counties of the Black Belt whole and in the two remedial opportunity districts. *Id*. at 41. Both plans also respect the overlapping Black Belt and Mobile communities of interest. *Id*. at 23. Plan 1 places 89.6% of Birmingham and 70.8% of Mobile in CD-2 and Plan 3 places 93.3% of Birmingham and 90.4% of Mobile in CD-2. *Id*. at 23, tbl. 1. Both plans also reasonably respect the state's policy choices, with Plans 1 and 3 leaving 88.9% and 86.9%, respectively, of the population in the same districts as Alabama's 2023 Plan. *Id*. at 28, tbl. 3.

## REMEDIAL PLAN 2

Plaintiffs oppose Remedial Plan 2 because it "will not with certitude completely remedy the Section 2 violation." *Dillard v. Crenshaw Cnty.*, 831 F. 2d 246, 252 (11th Cir. 1987). This Court has stressed that any remedy must include two opportunity districts. Order, Doc. 273 at 7. It defined an opportunity district as a one where a "meaningful number" of non-Black voters "join[] a politically cohesive

---

July 13, 2023 hearing before the Legislature's Joint Committee on Reapportionment. At the hearing, about 30 residents of Dothan who are "familiar with the Dothan community" and "work together on issues" with Dothan's former mayor arrived by bus from Dothan wearing shirts and supporting putting Dothan with the Black Belt in CD-2. Schmitz Dep. 32:5-33:18, Doc. 261-6.

5

black community to elect" Black-preferred candidates. *Id*. at 6 n.6 (citations omitted).

Based on the 2022 elections, CD-2 in Remedial Plan 2 fails to remedy the likely § 2 violation because Black-preferred candidates would have lost four of the five contests analyzed. Doc. 296-3 at 3; *see LULAC*, 548 U.S. at 428 (examining an opportunity district based solely on the performance of minority-preferred candidates in the last statewide congressional elections). In the fifth election, the Black-preferred candidate won by the slimmest of margins at 0.1 percentage points. Doc. 296-3 at 3. A district where the Black-preferred candidate wins only one of five times (20%) in the most recent congressional election cannot be considered an opportunity district. *Cf. Abbott v. Perez*, 138 S. Ct. 2305, 2332 (2018) (finding that an illustrative district where minority-preferred candidates won only 20% of elections—7 of 35 elections—was *not* a "performing" opportunity district). Because Plan 2 lacks two opportunity districts, the Court should reject it.

## CONCLUSION

Plaintiffs respectfully urge the Court to adopt either Special Master Remedial Plan 1 or Remedial Plan 3 to completely remedy the likely § 2 violation.

Respectfully submitted this 28th day of September 2023,

*/s/ Deuel Ross*
Deuel Ross*
 NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden*
Stuart Naifeh*
Ashley Burrell*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
 NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

Shelita M. Stewart*
Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

*/s/ Sidney M. Jackson*
Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
        FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

Davin M. Rosborough*
Julie Ebenstein*
Dayton Campbell-Harris*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars Ste. 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

**Counsel for Milligan Plaintiffs**

7

Janette Louard*
Anthony Ashton*
Anna Kathryn Barnes*
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Counsel for Plaintiff Alabama State Conference of the NAACP*

* *Admitted Pro Hac Vice*